**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                    **NOT FOR PUBLICATION**

CORPORATE RESOURCES SERVICES, INC., *et al.*,[1]         Chapter 11

                                                          Case No. 15-12329 (MG)

                                    Debtors.

------------------------------------------------------------------------x

STAFF MANAGEMENT SOLUTIONS, LLC and
PEOPLESCOUT MSP, LLC,

                                    Plaintiffs,
                                                          Adv. Proc. No. 19-01371 (MG)

                        v.

JAMES S. FELTMAN, as Chapter 11 Trustee of the
Estate of Corporate Resource Services, Inc., *et al.*,
WELLS FARGO BANK, N.A., and
NOOR STAFFING GROUP, LLC,

                                    Defendants.

---------------------------------------------------------------------------

**MEMORANDUM OPINION AND ORDER DENYING STAFF MANAGEMENT'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

*A P P E A R A N C E S:*

The Hughes Firm, LLC
*Attorneys for Staff Management Solutions, LLC and*
*PeopleScout MSP, LLC*
2027 West Division Street, Suite 122
Chicago, Illinois 60622
By:     Ray Hughes, Esq.

Togut, Segal & Segal LLP
*Attorneys for James S. Feltman, Not Individually*
*But Solely in His Capacity as Chapter 11 Trustee of*
*the Estate of Debtors Corporate Resource Services, Inc., et al.*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are:  (1) Corporate Resource Services, Inc. (1965); (2) Accountabilities, Inc. (5619); (3)
Corporate Resource Development, Inc. (1966); (4) Diamond Staffing Services, Inc. (7952); (5) Insurance Overload
Services, Inc. (9798); (6) Integrated Consulting Services, Inc. (2385); (7) The CRS Group, Inc. (1458); and (8) TS
Staffing Services, Inc. (8647).

One Penn Plaza, Suite 3335
New York, New York 10119
By:     Neil Berger, Esq.
        Patrick Marecki, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Staff Management Solutions, LLC and PeopleScout MSP,

LLC's (collectively "Staff Management") motion for entry of a preliminary injunction against

James S. Feltman, as chapter 11 trustee (the "Trustee") of the estate of Debtors Corporate

Resource Services, Inc. and its affiliated debtors (the "Debtors"). ("Injunction Motion," ECF

Doc. # 13.)[2] The Injunction Motion is supported by the declarations of Jeremy Nunn and Ray

Hughes. ("Nunn Declaration," ECF Doc. # 13-1; "Hughes Declaration," ECF Doc. # 13-2.) On

March 30, 2020, the Trustee filed an objection to the Injunction Motion. ("Objection," ECF

Doc. # 20.) The Objection is supported by the declaration of the Trustee. ("Trustee

Declaration," ECF Doc. # 20-1.) On April 6, 2020, Staff Management filed a reply to the

Trustee's Objection. ("Reply," ECF Doc. # 31.)

Staff Management seeks entry of an order that preliminarily enjoins the Trustee from

taking any action with respect to $1,020,182.46 in cash referenced in the Corporate Monthly

Operating Report (Case No. 15-12329, ECF Doc. # 1017). (Proposed Order.) The Proposed

Order would require the Trustee to open a bank account and transfer those funds into that

account, so that they are held separately from the other estate assets to protect from further use.

---

[2]      On October 15, 2019, Staff Management filed an emergency motion for a temporary restraining order and
preliminary injunction, seeking substantially similar relief to the relief sought in the pending Injunction Motion.
("First Injunction Motion," ECF Doc. # 3.) Both motions are substantially similar, with the main differences being
that the Injunction Motion includes updated financial information and does not include a request for a temporary
restraining order. Staff Management has withdrawn the First Injunction Motion, so the Court will not consider it for
the purposes of this Opinion. ("Proposed Order," ECF Doc. # 13-4 at 3.)

(*Id.* at 3.)  The Proposed Order also would require Staff Management to post a bond with this

Court in the amount of $10,000 within 30 days of entry of the Proposed Order.  (*Id.*)

For the following reasons, the Court denies Staff Management's Injunction Motion.

## I.  BACKGROUND

### A.  General Background

Staff Management is in the temporary staffing business and subcontracted work to Debtor

Corporate Resource Development, Inc. ("CRD").  (Injunction Motion ¶ 1.)  On September 29,

2014, CRD provided Staff Management with written authorization to make payments to CRD by

electronic transfer to a specific account at Wells Fargo Bank, N.A. (the "Wells Fargo Account");

Staff Management thereafter made payments to the Wells Fargo Account for services provided

by CRD.  (*Id.* ¶¶ 9–10.)  On January 10, 2015, Staff Management entered into a written supplier

non-exclusive master service agreement with CRD (the "CRD Contract").  (*Id.* ¶ 7.)  Pursuant to

the CRD Contract, CRD supplied temporary labor to Staff Management clients, and Staff

Management processed and forwarded payments from those clients to the Wells Fargo Account.

(*Id.* ¶ 8.)

On February 26, 2015, CRD transferred its business to Noor Staffing Group, LLC

("Noor") by entering into an Asset Purchase Agreement with Noor.  (*Id.* ¶¶ 11–12.)  Staff

Management entered into a new written supplier non-exclusive master service agreement with

Noor, effective March 21, 2015 (the "Noor Contract").  (*Id.* ¶ 13.)  Pursuant to the Noor

Contract, Noor was required to supply temporary labor to Staff Management's client, and in

exchange, Staff Management would process and forward payments from that client.  (*Id.* ¶ 14.)

Staff Management was not involved in the transaction, but agreed to a new contract with Noor

covering work performed by them in March 2015.  (*Id.* ¶ 1.)

3

**B. Bankruptcy Proceedings**

On July 23, 2015, the Debtors, including CRD, filed voluntary chapter 11 petitions which were jointly administered in this Court in *In re Corporate Resource Services, Inc., et al*, Case No. 15-12329 (MG) [hereinafter "Main Case"]. (*Id.* ¶ 16.) Staff Management states that during the transition of the business from CRD to Noor, Staff Management was not aware that CRD was experiencing financial difficulties and it did not receive notice of the CRD bankruptcy proceedings at that time. (*Id.* ¶¶ 15, 18.)

**C. Payments from Staff Management to the Wells Fargo Account**

During the transition of the business from CRD to Noor, Staff Management states that it continued sending payments to CRD's Wells Fargo Account. (*Id.* ¶ 19.) After CRD transferred the business to Noor, Staff Management made eighty-four (84) payments to the Wells Fargo Account from April 8, 2015 through January 27, 2016, totaling $1,541,056.31. (*Id.* ¶¶ 20, 22 (citing Nunn Declaration, Ex. 2).) Account statements provided by Bank of America[3] evidence these payments. (*Id.* ¶ 21 (citing Nunn Declaration, Ex. 2).)

An itemized list of the transfers provided by Wells Fargo to Staff Management shows that Wells Fargo transferred funds in the Wells Fargo Account to the Trustee on the following dates and in the following amounts:

- 12/3/2015: $340,161.52
- 12/4/2015: $16,239.69
- 12/11/2015: $38,396.32
- 12/18/2015: $65,534.14
- 12/23/2015: $50,047.45
- 12/30/2015: $28,010.90
- 1/8/2016: $20,663.49
- 1/15/2016: $71,170.43
- 1/22/2016: $100,924.59

---

[3] The Hughes Declaration indicates that Staff Management's bank is Bank of America. (Hughes Declaration, ¶ 7.)

- 1/27/2016: $21,082.86
- 7/18/2017: $67,626.86

(*Id.* ¶ 26; Nunn Declaration, Ex. C.)

The total amount transferred from the Wells Fargo Account to the Trustee in these eleven

transactions was $819,858.25.  (*Id.* ¶ 26.)  Based on Staff Management's discussions with Wells

Fargo, Staff Management believes an additional $200,324.21 was transferred from the Wells

Fargo Account to the Trustee, for a total amount of $1,020,182.46.[4]  (Injunction Motion ¶ 27

(citing Hughes Declaration ¶¶ 16–18).)  In motion papers filed earlier this year, Wells Fargo also

stated that "it turned over any funds it held on CRD's behalf either to the Trustee or to Noor. . .

."  (*Id.* ¶ 29 (citing Main Case, ECF Doc. # 978 at 2).)

Staff Management alleges that the Trustee knew that the monies transferred from the

Wells Fargo Account included Staff Management's money.  (*Id.* ¶ 31.)  Staff Management points

to the complaint filed on March 4, 2016 by the Trustee in the Noor adversary proceeding to

support its view.  (*Id.*; "Noor Complaint," Noor Adv. Proc. No. 16-01037 (the "Noor Adversary

Proceeding"), ECF Doc. # 1.)  In the Noor Complaint, the Trustee sought, among other things:

(i) the immediate turnover pursuant to section 542 of the Bankruptcy Code of the past due

payments under the Asset Purchase Agreement and all cash collected on account of any CRD

Receivables; (ii) the avoidance of the CRD sale as a constructive fraudulent transfer pursuant to

sections 548 and 550 of the Bankruptcy Code; (iii) a judgment that Noor's failure to pay the

amounts past due under the Asset Purchase Agreement and withhold collections from the CRD

Receivables violated the automatic stay pursuant to section 362 of the Bankruptcy Code; and (iv)

---

[4]    Staff Management states that these funds were not reflected on Wells Fargo's summary because the
summary was based on payments listed in Staff Management's original complaint.  (Injunction Motion ¶ 28;
"Complaint," ECF Doc. # 1.)  On November 29, 2019, Staff Management filed an amended complaint ("Amended
Complaint," ECF Doc. # 10) listing additional payments by Staff Management to the Wells Fargo Account.
(Injunction Motion ¶ 28.)  Wells Fargo is still confirming the additional $200,324.21 amount.  (*Id.*)

a declaratory judgment that certain funds held at, or distributed by Wells Fargo, were property of the estate pursuant to section 541 of the Bankruptcy Code.  (Objection ¶ 11.)

The Noor Complaint alleged that "Noor represented that . . . Wells Fargo had collected and retained the monies collected on account of the Noor Receivables that belong to Noor and that those amounts were material to Noor."  (Noor Complaint ¶ 144.)  The Noor Complaint also states that "Wells Fargo holds approximately $1.3 million of CRD-Noor Disputed Funds" and sought a declaration that those funds were property of the estate under section 541 of the Bankruptcy Code.  (*Id.* ¶¶ 239, 244.)  Lastly, the Noor Complaint provides that "various Noor customers—who used to be customers of CRD until the Transaction—have continued to pay Wells Fargo by accident because of a failure to change bank payment information (and human error)."  (Noor Adversary Proceeding, ECF Doc. # 1-6 ¶ 5.)  Staff Management also states that the Trustee had access to CRD financial records and could see that disputed funds came from Staff Management but did not return the funds or notify Staff Management that the funds would be disbursed.  (Injunction Motion ¶¶ 33–34.)

### D.  The Noor Settlement

On May 30, 2017 the Trustee entered into a settlement with Noor in the Noor Adversary Proceeding (the "Noor Settlement"), which was so ordered by the Court on June 2, 2017. (Objection. ¶ 12 (citing Noor Adversary Proceeding, ECF Doc. # 102); *see* Noor Settlement, Noor Adversary Proceeding, ECF Doc. # 97-2.)  The Noor Settlement provided, among other things, the following settlement consideration:

> **Settlement Consideration**. Upon approval of this Settlement Agreement:
>
> a.  Defendants release any claims to money that Defendants allege the Trustee has received from Wells Fargo (the "Wells Fargo Amounts"), the amount and ownership of which is subject to a dispute between the Trustee and Defendants, and

      b.  Defendants release any claims to the entirety of the CRD-Noor OAP held by Wells Fargo, the ownership of which is disputed, and which Wells Fargo has confirmed is $1,241,806.79 as of April 26, 2017, to the Trustee. . . .

(Objection ¶ 13 (quoting Noor Settlement ¶¶ 1(a)-(b)).)

The Noor Settlement further provided that "[t]here will be no reconciliation of the CRD-Noor OAP, the Wells Fargo Amounts, or any other amounts related thereto."  (*Id.* ¶ 14 (quoting Noor Settlement ¶ 1(e)).)

The Noor Settlement provided the following release (the "Release") from Noor to the Trustee and the Debtors:

> Defendants on behalf of themselves, their heirs, representatives and assigns, do hereby fully, finally and forever waive, release and/or discharge the Trustee, the Debtors, their estates, and their respective heirs, successors, assigns, affiliates, officers, directors, shareholders, members, associates, partners, subsidiaries, predecessors, successors, employees, attorneys, and agents from any and all of Defendants' claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, **which arise from or otherwise relate to the transactions referenced in the Adversary Proceeding or the Claim or result from any act or omission with respect to the Adversary Proceeding or the Claim to the extent permitted by law**. . . .

(*Id.* ¶ 15 (quoting Noor Settlement ¶ 10) (emphasis in original).)

Staff Management indicates that it was not aware of or involved in the Noor Settlement negotiations between Noor and the Trustee.  (Nunn Declaration ¶ 12.)

### E.  The Illinois Lawsuit

On January 25, 2019, Noor filed an action against Staff Management in the United States District Court for the Northern District of Illinois captioned *Noor Staffing Group, LLC d/b/a J.D. & Tuttle Hospitality Staffing v. Staff Management Solutions LLC and PeopleScout MSP, LLC*, Case No. 1:19-cv-00529 (the "Illinois Lawsuit"), seeking to recover the funds that Staff Management sent to the Wells Fargo Account.  (Injunction Motion ¶ 23.)  Noor alleges in its

complaint in the Illinois Lawsuit that "Staff Management directed a portion of the payments for the labor services performed by [Noor] Staffing to a bank account, which was not owned by [Noor] Staffing."  (*Id.* ¶ 24 (quoting Illinois Lawsuit, ECF Doc. # 1 ¶ 25).)  Noor alleges that Staff Management owes $1,082,447.29 under the Noor Contract.  (*Id.* (citing Illinois Lawsuit, ECF Doc. # 1 ¶¶ 18–31).)  After the Illinois Lawsuit was filed, Staff Management claims that it asked the Trustee and Wells Fargo to preserve the transferred funds, but they refused to do so. (Injunction Motion ¶ 25.)

On June 24, 2019, Staff Management filed its answer and counterclaims against Noor in the Illinois Lawsuit.  (Illinois Lawsuit, ECF Doc. # 24 at 6–14.)  Staff Management counterclaims for unjust enrichment and a declaratory judgment that "the [Noor] Settlement Agreement release[d] any claims by Noor against [Staff Management] regarding the funds sent by Staff Management to the Wells Fargo Account."  (*Id.* at 13.)  Staff Management's unjust enrichment claim against Noor is premised on Noor's negotiations with the Trustee for the Noor Settlement while simultaneously making claim to funds in the Wells Fargo Account.  (*Id.* at 14.) Noor was therefore enriched by, and benefited from, the funds paid by Staff Management.  (*Id.*)

On March 6, 2020, Noor responded to Staff Management's counterclaims and (i) denied that it authorized Staff Management to send payments the Wells Fargo Account, (ii) admitted that, while making claim to those funds, Noor negotiated the Noor Settlement with the Trustee, and (iii) denied that it was enriched by, and benefited from, the funds paid by Staff Management. (*Id.*; ECF Doc. # 59 at 5.)

At oral argument before this Court on April 8, 2020, the Trustee argued that Staff Management's defenses and counterclaims against Noor in the Illinois Lawsuit are duplicative of Staff Management's claims against the Trustee in this adversary proceeding.  According to the

Trustee, Staff Management should fully prosecute its claims against Noor before the Illinois

District Court, instead of substituting the Trustee for Noor in the present case by asserting the

same claims.

At oral argument, the parties also indicated that fact discovery in the Illinois Lawsuit

must be completed by May 6, 2020.  A status conference is scheduled in the Illinois Lawsuit for

May 14, 2020.

### F.  Staff Management's Motion to Enforce the Noor Settlement

On August 8, 2019, Staff Management filed a motion in the Debtors' chapter 11 case to

enforce the Noor Settlement.  ("Settlement Enforcement Motion," Main Case, ECF Doc. # 965.)

In the Settlement Enforcement Motion, Staff Management argued that Noor's Release in the

Noor Settlement covered the funds in the Wells Fargo Account that were being litigated in the

Illinois Lawsuit, thus precluding any liability.  (Objection ¶ 16; *see, e.g.*, Settlement Enforcement

Motion ¶¶ 1, 18–20, 26–27, 32–33, 36, 38–39, 41–42, 44–45, 48.)

On October 10, 2019, the Court entered an order denying the Settlement Enforcement

Motion.  ("Settlement Enforcement Order," Main Case, ECF Doc. # 991.)  The Settlement

Enforcement Order found that the "[Noor Settlement] provided, among other things, that Noor

released all claims related to the Wells Fargo Account" and the "the terms of the [Noor

Settlement] protect the Trustee, the Debtors, [and] their estates."  (*Id.* at 4, 15; Objection ¶ 17.)

However, the Court held that Staff Management did not have standing to directly enforce the

Noor Settlement because Staff Management was not a party to the Noor Settlement and was not

unambiguously included in Noor's Release.  (Settlement Enforcement Order at 14; Objection ¶

17.)  The Settlement Enforcement Order expressly declined to reach the issue whether the Noor

Settlement and Noor's Release barred any claims that Staff Management could assert against the

9

Debtors' estates related to the Wells Fargo Account, as that issue was not before the Court. (Settlement Enforcement Order at 7 n.2; Objection ¶ 18.)

Pursuant to the Settlement Enforcement Order, Staff Management told the Court at oral argument that it is precluded from raising certain affirmative defenses and counterclaims in the Illinois Lawsuit.

### G. The Current Estate Balance

As of the filing of the Injunction Motion, the Trustee's operating report, dated December 9, 2019, lists a remaining cash balance for the estate of $2,610,754 as of October 31, 2019. (Main Case, ECF Doc. # 1017 at 2.)[5]  The operating report also lists $5,072,505 in accounts payable, and a number of large fee applications have been filed recently totaling $2,930,533.53. (Injunction Motion ¶ 36.)  Thus, Staff Management argues that it is not adequately protected because the estate only has $2,610,754 on hand, but contemplates making payments in excess of $2,930,533.53.  (*Id.* ¶ 37.)

The Trustee counters that the Debtors continue to bring in millions of dollars in receivables and from litigations that have been concluded.  (Objection ¶ 31.)

### H. The Pending Adversary Proceeding and Injunction Motion

On October 11, 2019, Staff Management filed the Complaint against the Trustee, Wells Fargo, and Noor seeking to recover funds that were mistakenly transferred to the Wells Fargo Account.  (Injunction Motion ¶ 35.)  After Staff Management filed its First Injunction Motion, the Court entered a consent order on October 25, 2019, requiring the Trustee to "set aside and reserve $440,000 of funds in the Debtor's estates . . . for ninety (90) days (the 'Reserve Period'),

---

[5]     Since December 2019, the Trustee has filed three subsequent operating reports.  The most recent operating report, dated March 23, 2020, indicates a remaining cash balance of $1,563,669 as of January 31, 2020.  (ECF Doc. # 1050 at 2.)  The March operating report also lists $4,732,113 in accounts payable (for professional fees incurred and unpaid since February 2020).  (*Id.* at 5; Reply ¶ 7.)

and such amount shall not be disbursed during the Reserve Period absent a further Order of this

Court." ("Consent Order," ECF Doc. # 5 at 3 (emphasis omitted).)  On November 29, 2019,

Staff Management filed the Amended Complaint for money had and received and unjust

enrichment against the Trustee and Wells Fargo.  (Amended Complaint.)

On December 24, 2019, Staff Management filed the pending Injunction Motion, arguing

that (1) it will suffer irreparable harm if the Trustee uses the funds; (2) Staff Management's

adversary proceeding against the Trustee is likely to succeed on the merits; and (3) serious issues

going to the merits and tipping of the equities weigh in Staff Management's favor.  (Injunction

Motion ¶¶ 38–53.)

## I. Trustee's Objection

On March 30, 2020, the Trustee filed the Objection, arguing that the Noor Settlement and

Staff Management's prior admissions bar recovery from the Debtors' estates in this adversary

proceeding.  (Objection at 6.)  The Trustee further argues that, although Staff Management may

have defenses to the claims that Noor asserts against it in the Illinois Lawsuit, those defenses do

not constitute affirmative claims against the Debtors' estates or the Trustee.  (*Id.*)

In response to the Injunction Motion, the Trustee first argues that Staff Management

cannot meet its burden of establishing a clear right to the drastic remedy of a preliminary

injunction.  (*Id.* ¶¶ 24–25.)  Staff Management faces no irreparable harm: (i) Staff Management's

claims are speculative and premature because they are contingent on Noor obtaining a judgment

against it; (ii) Staff Management sat on its rights for several years, and its inaction establishes

that it will not suffer irreparable injury in the absence of an injunction; (iii) Staff Management's

pursuit of money damages bars the issuance of a preliminary injunction; and (iv) Staff

Management remains adequately protected.  (*Id.* ¶¶ 26–32.)

Second, the Trustee argues that Staff Management cannot demonstrate likelihood of success on the merits because the Noor Settlement and Staff Management's prior admissions both expressly indicate that Noor released the Trustee of any liability related to the funds in the Wells Fargo Account. (*Id.* ¶¶ 34–40.) The Trustee further argues that Staff Management's equitable claims must be defeated because the "mistake of fact" doctrine is inapplicable where the payee has changed its position to its detriment in reliance on the mistaken payments. (*Id.* ¶¶ 41–43.)

Finally, the Trustee argues that the equities strongly weigh against granting Staff Management the requested relief because such relief would effectively unwind the Noor Settlement by voiding an unambiguous release and forcing the Trustee to indirectly repay to Noor the very settlement currency that he fought to obtain. (*Id.* ¶¶ 44–47.)

**J.  Staff Management's Reply**

In its Reply, Staff Management rejects the Trustee's argument that it has not shown a likelihood of success on the merits because the Trustee does not deny that he has funds belonging to Staff Management. (Reply ¶ 1.) Further, Staff Management took immediate action after being served in the Illinois Lawsuit, including requesting that the Trustee immediately preserve the disputed funds and bank records to support future motion practice. (*Id.* ¶ 2.) Staff Management soon thereafter filed the Settlement Enforcement Motion. (*Id.*)

Citing to case law in this Circuit, Staff Management indicates that injunctions are appropriate where a defendant took steps to frustrate a future judgment or where the defendant may become insolvent. (*Id.* ¶ 3 (quoting *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018).) Staff Management also argues that it is not adequately protected because

the estate has been depleted by $1,047,085 in 3.5 months and there are over $2 million in unpaid

fee applications.  (*Id.* ¶¶ 4–7.)

Additionally, the Trustee argues that it was not a party to the Noor Settlement between

the Trustee and Noor, so just because Noor released the Trustee does not mean that

Staff Management has released Noor.  (*Id.* ¶ 8.)  Finally, Staff Management maintains that a

change of position defense to the mistake of fact doctrine is inapplicable where, as here, the

payee—*i.e.*, the Trustee—was aware that it had funds that did not belong to the estate, yet

provided no notice to Staff Management.  (*Id.* ¶ 10.)

## II.    LEGAL STANDARD

Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a).  The traditional standards for issuance of an injunction pursuant to Rule 65 of

the Federal Rules of Civil Procedure are made applicable to adversary proceedings under

Bankruptcy Rule 7065.  *See E. Air Lines v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R.

423, 431 (Bankr. S.D.N.Y. 1990).  "A decision to grant or deny a preliminary injunction is

committed to the discretion of the district court."  *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74,

78 (2d Cir. 1994).

The Second Circuit recognizes a preliminary injunction as "one of the most drastic tools

in the arsenal of judicial remedies" that should be granted only in extraordinary circumstances.

*Amusement Indus., Inc. v. Citigroup Glob. Mkts. Realty Corp. (In re First Republic Group

Realty, LLC.)*, 421 B.R. 659, 677 (Bankr. S.D.N.Y. 2009) (quoting *Hanson Trust PLC v. SCM

Corp.*, 774 F.2d 47, 60 (2d Cir. 1985)).  Because the issuance of a preliminary injunction is

considered an extraordinary remedy, the movant bears a heavy burden to show that it is entitled

to an injunction. *See Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) ("[A]

preliminary injunction is an extraordinary and drastic remedy, one that should not be granted

unless the movant, *by a clear showing*, carries the burden of persuasion.") (quoting *Mazurek v.

Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).

The Second Circuit has explained that a party seeking a preliminary injunction must

show that either "he is likely to succeed on the merits; that he is likely to suffer irreparable harm

in the absence of preliminary relief; that the balance of equities tips in his favor; and that an

injunction is in the public interest," or, alternatively, "show irreparable harm and either a

likelihood of success on the merits or sufficiently serious questions going to the merits to make

them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

requesting the preliminary relief." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d

Cir. 2015) (internal quotation marks and citations omitted); s*ee also Winter v. Nat. Res. Def.

Council, Inc.*, 555 U.S. 7, 20 (2008).

### III.   DISCUSSION

The Court denies Staff Management's Injunction Motion.  First, Staff Management's

claims against the Trustee in the pending adversary proceeding and Injunction Motion are

duplicative of the issues currently being litigated by Staff Management and Noor in the Illinois

Lawsuit.  Second, Staff Management has failed to meet its burden to show that the drastic

remedy of a preliminary injunction is warranted here.  *See Sussman,* 488 F.3d at 139.

#### A.  Staff Management's Claims Against the Trustee Are Duplicative of Staff Management's Counterclaims Against Noor in the Illinois Lawsuit

After this Court denied Staff Management's Settlement Enforcement Motion on the

ground that Staff Management lacked standing to enforce Noor's release of the Debtors and the

Trustee, Staff Management sued the Trustee in the pending adversary proceeding for the same

14

defenses it raised against Noor in the Illinois Lawsuit.  At oral argument, it was revealed that

Staff Management filed a counterclaim against Noor in the Illinois Lawsuit, and that the Illinois

Lawsuit is in the middle of discovery.  Staff Management's counterclaim against Noor in the

Illinois Lawsuit includes a cause of action for unjust enrichment.  Like the allegations against the

Trustee for unjust enrichment in the Amended Complaint, Staff Management alleges in the

Illinois Lawsuit that it sent payments to the Wells Fargo Account; Noor, while making claim to

those funds, negotiated the Settlement Agreement with the Trustee; and Noor was therefore

enriched by and/or benefited from the funds paid by Staff Management.  (Illinois Lawsuit, ECF

Doc. # 24 at 14.)  The Trustee is correct in arguing that Staff Management should pursue the

merits of its defenses against Noor before the Illinois District Court, where its case has been

pending for fourteen months, instead of seeking injunctive relief against the Trustee from this

Court for identical causes of action.

### B.  Staff Management Has Not Clearly Shown That It Is Entitled to a Preliminary Injunction

Staff Management has not made a clear showing of irreparable harm absent the relief

requested, a likelihood of success on the merits in the pending adversary proceeding, or that the

balance of the equities tip decidedly in its favor.

#### 1.  Staff Management Has Not Demonstrated Irreparable Harm in the Absence of a Preliminary Injunction

"Irreparable harm is an injury that is not remote or speculative but actual and imminent,

and for which a monetary award cannot be adequate compensation."  *EMA Fin., LLC v. Vystar*

*Corp.*, 1:19-cv-01545 (ALC), 2020 WL 1233608, at *4 (S.D.N.Y. Mar. 13, 2020) (quoting

*Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp.

2d 803, 828 (S.D.N.Y. 2011)).  "Irreparable harm is the single most important prerequisite for

the issuance of a preliminary injunction." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114

(2d Cir. 2005) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999)).

"To determine whether a plaintiff has shown irreparable harm, the court must actually

consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but

ultimately prevails on the merits, paying particular attention to whether the remedies available at

law, such as monetary damages, are inadequate to compensate for that injury." *Hyde v. KLS*

*Prof'l Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012) (quoting *Salinger v. Colting*, 607

F.3d 68, 80 (2d Cir. 2010)). "An irreparable harm is one that cannot be remedied through a

monetary award." *In re First Republic Group Realty*, *LLC*., 421 B.R. at 678. In *Grupo*

*Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc*., 527 U.S. 308 (1999), the Supreme Court

held that, in an action for money damages, a trial court did not have the authority issue a

preliminary injunction to prohibit a defendant from transferring assets. Thus,

> Pursuant to *Grupo* . . . , district courts have no authority to issue a
> prejudgment asset freeze pursuant to Rule 65 where such relief was not
> 'traditionally accorded by courts of equity.' But they maintain the equitable
> power to do so where such relief was traditionally available: where the
> plaintiff is pursuing a claim for final equitable relief, . . . and the preliminary
> injunction is ancillary to the final relief.

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014) (internal quotation marks and

citations omitted).

Staff Management's basis for demonstrating irreparable harm is that, due to purportedly

dwindling estate assets,[6] the Trustee will not be able to satisfy a judgment in Staff Management's

favor if Staff Management prevails in this adversary proceeding. (Injunction Motion ¶¶ 43–45.)

Citing to *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, the Trustee argues that Staff

---

[6]      The estate's remaining cash balance is $1,563,669 as of February 29, 2020 (Main Case, ECF Doc. # 1050)
and the Trustee expects to bring in further recoveries for Debtors' estate from future litigations. (Objection ¶ 31.)

Management's pursuit of monetary damages precludes the issuance of a preliminary injunction. 149 F. Supp. 3d 376 (E.D.N.Y. 2016). However, that case is not applicable to the Injunction Motion. *Vis Vires Grp., Inc.* holds that *Grupo* and its progeny "do[] not preclude a court from entering a preliminary injunction to protect the assets where the plaintiff's underlying claims are *primarily equitable in nature*." *Id*. at 393 (emphasis added). Staff Management's claims— money had and received and unjust enrichment—are both equitable and, therefore, nothing prevents this Court from entering a preliminary injunction to protect estate assets. *See Volpone*, 313 F. Supp. 3d at 497 ("An unjust enrichment claim 'can serve as the basis for a preliminary injunction freezing assets,' under circumstances where 'the defendant took steps to frustrate a future judgment or that the defendant is or imminently will be insolvent.'") (quoting *Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, No. 16 CIV. 6805 (JSR), 2017 WL 737315, at *3 (S.D.N.Y. Feb. 6, 2017)) (emphasis omitted).

Staff Management cites to *Drobbin v. Nicolet Instrument Corp.* to support its claim of irreparable harm because "[w]here a plaintiff's injury is theoretically compensable in money damages but, as a practical matter, the defendant would not or could not respond fully for those damages, preliminary injunctive relief has been deemed necessary to protect plaintiff from irreparable injury." 631 F.Supp. 860, 912 (S.D.N.Y. 1986). Not only did *Drobbin* involve a claim for money damages (which, as discussed above, is not the case here), but the parties against whom an injunction was being sought in that case also did not have "sufficient assets to pay any damages to which [the Movant] would be entitled in lieu of the shares." *Id.* Unlike those parties, Staff Management appears to be adequately protected in the pending matter. The Debtors have $1,563,669 cash on hand as of their March operating report. (Objection ¶ 31 (citing Main Case, ECF Doc. # 1050 at 5–6).) Further, the Trustee maintains that the Debtors

continue to bring in millions of dollars in receivables and from litigations that have been concluded, and the Trustee is still prosecuting litigations that are expected to result in significant recoveries for the Debtors' estates. (*Id.* ¶ 31 (citing Case No. 15-12329, ECF Doc. # 1050, at MOR-3 (Balance Sheet)).) Despite Staff Management's concerns regarding the several pending fee applications, Staff Management's funds are adequately protected given the state of Debtors' estate. (*Compare* Injunction Motion ¶¶ 36, 44, *with* Objection ¶¶ 31–32.)

The Court also finds that Staff Management will not suffer irreparable harm in the absence of a preliminary injunction because Staff Management sat on its rights for several years. Staff Management alleges that its last payment to the Wells Fargo Account was made in January 2016, and Noor filed the Illinois Lawsuit against Staff Management in January 2019—more than fourteen months ago. (Objection ¶ 28 (citing Injunction Motion ¶¶ 20, 23).) Nearly four years after its last payment to the Wells Fargo Account and ten months after Noor filed the Illinois Lawsuit against it, Staff Management filed the First Injunction Motion. (*Id.*) Staff Management claims that it made a strategic decision to pursue an alternative course of action to a preliminary injunction after the Illinois Lawsuit was filed—*i.e.*, the Settlement Enforcement Motion—but that motion was still filed nearly seven months after the Illinois Lawsuit was filed.

Staff Management's delay clearly undermines its claim of irreparable harm and "demonstrates a lack of need for speedy action" that would justify the issuance of a preliminary injunction. *See Lanvin Inc. v. Colonia*, *Inc*., 739 F. Supp. 182, 192 (S.D.N.Y. 1990) (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (denying preliminary injunction where movant sat on rights for seven months because "[p]reliminary injunctions involve an urgent need for speedy action to protect the movant's rights")); *see also Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("[A]ny such presumption of irreparable harm

is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary

injunctive relief.  Though such delay may not warrant the denial of ultimate relief, it may,

standing alone, preclude the granting of preliminary injunctive relief because the failure to act

sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary

relief and suggests that there is, in fact, no irreparable injury.") (internal quotations marks and

citations omitted); *Citibank*, 756 F.2d at 276 (delay of suit for nine months after receiving notice

in the press, and ten weeks after receiving actual notice, negates any presumption of irreparable

harm).

2.    Staff Management Is Not Likely To Succeed on the Merits Of Its Equitable
Claims

Staff Management argues that it is likely to succeed in recovering the funds mistakenly

transferred and credited to the Wells Fargo Account and the Trustee by applying the mistake of

fact doctrine to its unjust enrichment and money had and received claims.  (Injunction Motion ¶¶

46–51.)[7]

With respect to the mistake of fact doctrine, the Court agrees with the Trustee that Staff

Management is unlikely to recover under the mistake of fact doctrine because the Trustee

changed its position to its detriment in reliance on the allegedly mistaken payments.  (Objection

¶¶ 41–43.)  "[T]he rule that a mistaken payment must be restored 'has been applied where the

cause of action has been denominated as one for money had and received, for unjust enrichment

or restitution, or upon a theory of quasi contract.'"  *U.S. ex rel. Ryan v. Staten Island University

Hosp.*, No. 04–CV–2483 (JG)(CLP), 2011 WL 1841795, at *5 (E.D.N.Y. 2011) (quoting *Banque

Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 366 (1991)).  Under New York law, while a party

---

[7]        Staff Management also asserts a claim for declaratory relief in the Amended Complaint.  The relief
requested in the Injunction Motion, however, is limited to Staff Management's causes of action against the Trustee
for money had and received and unjust enrichment.  (*Id.* ¶ 46.)

who has made a mistaken payment to another based upon a unilateral mistake of fact may recover the payment under the mistake of fact doctrine, such recovery is precluded where "the payee has changed his position to his detriment in reliance upon the mistaken payment." *Mfrs. Bank Saderat Iran v. Amin Beydoun, Inc.*, 555 F. Supp. 770, 773 (S.D.N.Y. 1983) (citation omitted).

Assuming Staff Management meets its burden to show that mistaken payments were made to the Wells Fargo Account, the Trustee has convincingly shown that he detrimentally changed his position in reliance on the purportedly mistaken payments. Staff Management's admissions in the Settlement Enforcement Motion that the funds it mistakenly transferred to the Wells Fargo Account were used by Noor to fund the Noor Settlement support this conclusion. (Objection ¶ 35 ("Noor used those [Wells Fargo] funds as leverage in its negotiations for the Settlement Agreement.") (citing Settlement Enforcement Motion ¶ 27).) The Trustee states that he would not have entered into the Noor Settlement if it did not finally and fully resolve Noor's claims, or if more than $1 million of the settlement consideration was subject to being clawed back. (*Id.* ¶ 43.)[8]

As argued by the Trustee, the clear intent of the Noor Settlement was to fully and finally resolve all claims between the Trustee, the Debtors, and Noor, which expressly included any claims related to the Wells Fargo Account. (*Id.* ¶ 40.) It cannot be reasonably argued that the Trustee negotiated and entered into the Noor Settlement on the understanding that Noor would

---

[8]    Staff Management argues that the defense of a change in position is not available to the Trustee because (1) the Trustee's position is not irrevocable (as required for a change in position defense under New York law), since he can still pursue Noor, a party to this lawsuit, and (2) the Trustee was aware of the mistaken payments. (Reply ¶¶ 10–14 (citing 82 N.Y. JUR. 2d Payment and Tender § 106 n.8 (2020)).) Both arguments lack merit. First, the Settlement Enforcement Order squarely precludes the Trustee from pursuing claims against Noor for funds in the Wells Fargo Account. Second, in the Trustee Declaration, the Trustee states that he "was not aware of Staff Management's allegedly mistaken payments until years later when Staff Management raised the issue in the context of this litigation." (Trustee Declaration ¶ 14.)

later be able seek recovery from a third party—Staff Management—that would then turn to the

Trustee in order to recover any monetary damages due to Noor.

While Staff Management may argue that its claims for money had and received and

unjust enrichment are likely to succeed on the merits, it is equally true that the Trustee relied on

the mistaken payments to its detriment, as indicated by its good-faith negotiations with Noor

resulting in the Noor Settlement.  Accordingly, Staff Management has not persuasively argued

that it is likely to succeed on the merits of this adversary proceeding in light of the Trustee's

defense.

The Trustee's argument that Staff Management cannot demonstrate likelihood of success

on the merits because the Noor Settlement and Staff Management's prior admissions expressly

indicate that Noor released the Trustee of any liability related to the Wells Fargo funds is not

dispositive.  (*Id.* ¶¶ 34–40.)  Though the Trustee points to Staff Management's prior admissions

in the Settlement Enforcement Motion, the Court expressly declined to reach the issue of

whether the Noor Settlement and Noor's Release barred any claims that Staff Management could

assert against the Debtors' estates related to the Wells Fargo funds, as that issue was not before

the Court.  (Settlement Enforcement Order at 7 n.2.)  Accordingly, Staff Management's prior

admissions in the Settlement Enforcement Motion are not dispositive of whether Staff

Management is likely to succeed on the merits of its claims.

### 3.    The Tipping of the Equities Weighs Against Injunctive Relief

Irreparable injury is a requirement for issuing a preliminary injunction and the Court has

found it lacking here.  The Court likewise concludes that Staff Management has failed to carry

its burden of demonstrating that there are sufficiently serious questions going to the merits to

make them a fair ground for litigation.  Thus, the Court does not need to go further with its analysis.

Nevertheless, the Court rejects Staff Management's alternative argument that serious issues going to the merits, coupled with a tipping of the equities in favor of the injunction, would also be satisfied.  (Injunction Motion ¶ 52.)  The requested relief would effectively unwind the Noor Settlement by voiding an unambiguous release and forcing the Trustee to indirectly repay to Noor the very settlement currency that he fought to obtain.  (Objection ¶ 45.)  The Court finds that it would be highly inequitable to deprive the Debtors' estates of their hard-fought settlement consideration, or to impede the Trustee's administration of the Debtors' estates to the detriment of the estates and their creditors.  (*Id*. ¶ 46.)

## IV.    CONCLUSION

For the foregoing reasons, this Court denies Staff Management's Injunction Motion.


Dated:    April 15, 2020
          New York, New York


                              *Martin Glenn*
                              MARTIN GLENN
                        United States Bankruptcy Judge