**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                                                    **NOT FOR PUBLICATION**

CORPORATE RESOURCE SERVICES, INC., *et al.*,[1]                         Chapter 11

                                                                                              Case No. 15-12329 (MG)

                                                   Debtors.

------------------------------------------------------------------------x

STAFF MANAGEMENT SOLUTIONS, LLC and
PEOPLESCOUT MSP, LLC,

                                                   Plaintiffs,
                                                                                              Adv. Proc. No. 19-01371 (MG)

                        v.

JAMES S. FELTMAN, as Chapter 11 Trustee of the
Estate of Corporate Resource Services, Inc., *et al.*,
WELLS FARGO BANK, N.A., and
NOOR STAFFING GROUP, LLC,

                                                   Defendants.

------------------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER (I) GRANTING WELLS FARGO BANK N.A.'S MOTION TO DISMISS AND (II) STAYING THE ADVERSARY PROCEEDING AGAINST THE CHAPTER 11 TRUSTEE AND NOOR STAFFING GROUP, LLC

*A P P E A R A N C E S :*

Togut, Segal & Segal LLP
*Attorneys for James S. Feltman, Not Individually*
*But Solely in His Capacity as Chapter 11 Trustee of*
*the Estate of Debtors Corporate Resource Services, Inc., et al.*
One Penn Plaza, Suite 3335
New York, New York 10119
By:     Neil Berger, Esq.
         Patrick Marecki, Esq.

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  (1) Corporate Resource Services, Inc. (1965); (2) Accountabilities, Inc. (5619); (3) Corporate Resource Development, Inc. (1966); (4) Diamond Staffing Services, Inc. (7952); (5) Insurance Overload Services, Inc. (9798); (6) Integrated Consulting Services, Inc. (2385); (7) The CRS Group, Inc. (1458); and (8) TS Staffing Services, Inc. (8647).

Otterbourg P.C.
*Attorneys for Wells Fargo Bank, National Association*
230 Park Avenue
New York, New York 10169
By:    Richard G. Haddad, Esq.
        John Bougiamas, Esq.

The Hughes Firm, LLC
*Attorneys for Staff Management Solutions, LLC and*
*PeopleScout MSP, LLC*
2027 West Division Street, Suite 122
Chicago, Illinois 60622
By:    Ray Hughes, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are the motions of James S. Feltman, as chapter 11 trustee (the "Trustee") of the estate of Debtors Corporate Resource Services, Inc., *et al.* (the "Debtors") and Wells Fargo Bank N.A. ("Wells Fargo," and together with the Trustee, the "Defendants"), seeking to dismiss the amended complaint (the "Amended Complaint," ECF Doc. # 10) filed by Staff Management Solutions, LLC and PeopleScout MSP, LLC (collectively, "Staff Management").  ("Trustee Motion to Dismiss," ECF Doc. # 23 and "Wells Fargo Motion to Dismiss," ECF Doc. # 24 (collectively, the "Motions to Dismiss").)  The Wells Fargo Motion to Dismiss is supported by a declaration of John Bougiamas (the "Bougiamas Declaration," ECF Doc. # 25) and a memorandum of law ("Wells Fargo MOL," ECF Doc. # 26).

On April 13, 2020, Staff Management filed oppositions to the Motions to Dismiss. ("Opposition to Trustee," ECF Doc. # 32; "Opposition to Wells Fargo," ECF Doc. # 33.)  On April 17, 2020, the Trustee and Wells Fargo filed replies.  ("Trustee Reply," ECF Doc. # 38; "Wells Fargo Reply," ECF Doc. # 39.)

For the following reasons, the Court grants the Wells Fargo Motion to Dismiss with prejudice.  The Court stays this adversary proceeding, including adjudication of the Trustee

2

Motion to Dismiss, pending resolution of the Illinois Lawsuit (as defined below) because Staff Management's recovery from the Trustee in this case at a minimum depends on Staff Management losing the Illinois Lawsuit.

## I.    BACKGROUND[2]

### A.    General Background

This case is the fourth lawsuit—three in this Court and one in the U.S. District Court for the Northern District of Illinois—involving over $1.5 million in funds transferred by Staff Management to a specific account at Wells Fargo (the "Wells Fargo Account") paying invoices submitted to Staff Management by Noor Staffing Group, LLC ("Noor"). Staff Management was not a party in the two earlier lawsuits in this Court; but Staff Management is the plaintiff in this adversary proceeding, and it is the defendant and counterclaimant in the Illinois action filed by Noor against Staff Management.

In one of the two earlier lawsuits in this Court, the Trustee sued Noor alone, seeking to recover damages for breach of contract and for release to the Trustee of funds deposited by Staff Management in the Wells Fargo Account; in the other lawsuit, the Trustee sued Wells Fargo alone seeking release to the Trustee of the funds in the Wells Fargo Account. The Trustee's lawsuit against Noor alleged that the funds in the Wells Fargo Account were property of the Debtors' estates and should be turned over to the Trustee; Noor's defense asserted in part that the funds in the Wells Fargo Account were payments by Staff Management for services provided by

---

[2]    The facts set forth below are drawn primarily from Staff Management's Amended Complaint and the Motions to Dismiss. The Court also takes judicial notice of certain court filings in related adversary proceedings and the Illinois Lawsuit (as defined below). The Court considers these filings to establish "the fact of such litigation and related filings," not for the truth of the matters asserted in them. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citations omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.") (emphasis in original).

Noor and that the funds belonged to Noor. The Trustee and Noor settled the action. Most

importantly for this case, the settlement included Noor's release of *any claims* to the funds held

in the Wells Fargo Account. Despite Noor's release of any claims to the funds in the Wells

Fargo Account, following the settlement with the Trustee, Noor filed its lawsuit against Staff

Management in Illinois claiming that Noor is entitled to recover from Staff Management the

amount that Noor expressly released in the settlement with the Trustee. Not surprisingly, Staff

Management argues otherwise, but as explained below, that is an issue for the district court in

Illinois, not for this Court.

**B.    The Temporary Staffing Business of Noor and Corporate Resource Development**

Staff Management is in the temporary staffing business. Staff Management

subcontracted work to Debtor Corporate Resource Development, Inc. ("CRD"). (*See* "Injunction

Opinion," ECF Doc. # 34 at 3; *see also* Amended Complaint ¶ 1.) On September 29, 2014, CRD

provided Staff Management with written authorization to make payments to CRD by electronic

transfer to the Wells Fargo Account; Staff Management thereafter made payments to the Wells

Fargo Account for services provided by CRD. (Amended Complaint ¶¶ 18–19.)

On January 10, 2015, Staff Management entered into a written supplier non-exclusive

master service agreement with CRD (the "CRD Contract"). (*Id.* ¶ 16.) Pursuant to the CRD

Contract, CRD supplied temporary labor to Staff Management clients, and Staff Management

processed and forwarded payments from those clients to the Wells Fargo Account. (*Id.* ¶ 17.)

On February 26, 2015, CRD transferred its business to Noor by entering into an Asset

Purchase Agreement with Noor. (*Id.* ¶¶ 20–21.) Staff Management entered into a new written

supplier non-exclusive master service agreement with Noor, effective March 21, 2015 (the "Noor

Contract"). (*Id.* ¶ 22.) Pursuant to the Noor Contract, Noor was required to supply temporary

labor to Staff Management's client, and in exchange, Staff Management would process and forward payments from that client.  (*Id.* ¶ 23.)

### C.      Bankruptcy Proceedings

On July 23, 2015, the Debtors, including CRD, filed voluntary chapter 11 petitions which were jointly administered in this Court in *In re Corporate Resource Services, Inc., et al.*, Case No. 15-12329 (MG) [hereinafter "Main Case"].  (*Id.* ¶ 25.)  Staff Management alleges that during the transition of the business from CRD to Noor, Staff Management was not aware that CRD was experiencing financial difficulties and it did not receive notice of the CRD bankruptcy proceedings at that time.  (*Id.* ¶ 24.)

### D.      Payments from Staff Management to the Wells Fargo Account

Staff Management alleges that due to a mistake during the transition of the business from CRD to Noor, it continued sending payments to CRD's Wells Fargo Account.  (*Id.* ¶ 27.)  After CRD transferred the business to Noor, Staff Management made eighty-four (84) payments to the Wells Fargo Account from April 8, 2015 through January 27, 2016, totaling $1,541,056.31.  (*Id.* ¶ 28.)

Some of the funds transferred by Staff Management to the Wells Fargo Account were then transferred to the Trustee.  (*Id.* ¶ 33.)  An itemized list of the transfers provided by Wells Fargo to Staff Management shows that Wells Fargo transferred funds in the Wells Fargo Account to the Trustee on the following dates and in the following amounts:

- 12/3/2015: $340,161.52
- 12/4/2015: $16,239.69
- 12/11/2015: $38,396.32
- 12/18/2015: $65,534.14
- 12/23/2015: $50,047.45
- 12/30/2015: $28,010.90
- 1/8/2016: $20,663.49
- 1/15/2016: $71,170.43

- 1/22/2016: $100,924.59
- 1/27/2016: $21,082.86
- 7/18/2017: $67,626.86

(*Id.* ¶ 34.)

A total of $819,858.25 was transferred from the Wells Fargo Account to the Trustee in these eleven transactions.  (*Id.*)  On January 15, 2020, Ray Hughes, Esq., counsel to Staff Management, filed a declaration in further support of Staff Management's Motion for Preliminary Injunction ("Injunction Motion," ECF Doc. # 13).  ("Hughes Declaration," ECF Doc. # 17.)  The Hughes Declaration states that a spreadsheet prepared by counsel to Wells Fargo demonstrates that $1,058,952.80 was transferred to the Trustee from the funds that Staff Management sent to the Wells Fargo Account.  (*Id.* ¶ 4; *id.*, Ex. E.)  The spreadsheet also shows that Wells Fargo transferred $482,103.51 from the Wells Fargo Account to Noor.  (*Id.*, Ex. E.)

The Amended Complaint alleges that Wells Fargo removed funds from the Wells Fargo Account for use by Wells Fargo.  (Amended Complaint ¶ 35.)  The Amended Complaint also alleges that Wells Fargo loaned the Debtors approximately $80 million, and as part of that transaction, Wells Fargo had a lien on most of the Debtors' assets (*id.* ¶ 36); and that funds from the Wells Fargo Account were used to satisfy amounts the Debtors' allegedly owed to Wells Fargo.  (*Id.*)  For example, the Trustee's Monthly Operating Report, dated October 27, 2017, states "the Debtor's former lender received and applied material amounts of accounts receivable collections.  The lender set off and paid certain costs and fees associated with their loan as well as winding down the Debtor affairs and certain costs of affiliates."  (*Id.* (citing Main Case, ECF Doc. # 707 at 1).)

Staff Management alleges that the Trustee and Wells Fargo knew that the funds transferred from the Wells Fargo Account included funds from Staff Management that did not

belong to the Debtors.  (*Id.* ¶ 37.)  In Staff Management's Injunction Motion, Staff Management

pointed to the complaint filed on March 4, 2016 by the Trustee in the Noor adversary proceeding

to support its view.  (Injunction Motion ¶ 31; "Noor Complaint," Adv. Proc. No. 16-01037 (the

"Noor Adversary Proceeding"), ECF Doc. # 1.)  In the Noor Complaint, the Trustee, *inter alia*,

sought: (i) the immediate turnover of the past due payments under the Asset Purchase Agreement

and all cash collected on account of any CRD Receivables pursuant to section 542 of the

Bankruptcy Code; (ii) the avoidance of the CRD sale as a constructive fraudulent transfer

pursuant to sections 548 and 550 of the Bankruptcy Code; (iii) a judgment that Noor's failure to

pay the amounts past due under the Asset Purchase Agreement and withholding collections from

the CRD Receivables violated the automatic stay pursuant to section 362 of the Bankruptcy

Code; and (iv) a declaratory judgment that certain funds held at, or distributed by Wells Fargo,

were property of the estate pursuant to section 541 of the Bankruptcy Code.  (Trustee Motion to

Dismiss ¶ 15 (citing Noor Complaint).)

The Noor Complaint alleged that "Noor represented that it could not pay the Trustee

because Wells Fargo had collected and retained the monies collected on account of the Noor

Receivables that belong to Noor and that those amounts were material to Noor."  (Noor

Complaint ¶ 144.)  The Noor Complaint also states that "Wells Fargo holds approximately $1.3

million of CRD-Noor Disputed Funds" and sought a declaration that those funds were property

of the estate under section 541 of the Bankruptcy Code.  (*Id.* ¶¶ 239, 244.)  Lastly, the Noor

Complaint provides that "various Noor customers—who used to be customers of CRD until the

Transaction—have continued to pay Wells Fargo by accident because of a failure to change bank

payment information (and human error)."  (Noor Adversary Proceeding, ECF Doc. # 1-6 ¶ 5.)

### E.    The Noor Settlement

On May 30, 2017, the Trustee and Noor settled the Noor Adversary Proceeding (the

"Noor Settlement," Noor Adversary Proceeding, ECF Doc. # 97-2); the Noor Settlement was

approved by the Court on June 2, 2017.  (*See* Trustee Motion to Dismiss ¶ 16 (citing Noor

Adversary Proceeding, ECF Doc. # 102).)  The Noor Settlement provided, among other things,

the following settlement consideration:

> **Settlement Consideration**.  Upon approval of this Settlement Agreement:
>
> a.  Defendants release any claims to money that Defendants allege the Trustee has received from Wells Fargo (the "Wells Fargo Amounts"), the amount and ownership of which is subject to a dispute between the Trustee and Defendants, and
>
> b.  Defendants release any claims to the entirety of the CRD-Noor OAP held by Wells Fargo, the ownership of which is disputed, and which Wells Fargo has confirmed is $1,241,806.79 as of April 26, 2017, to the Trustee. . . .

(*Id.* (quoting Noor Settlement ¶¶ 1(a)–(b)).)

The Noor Settlement provided that "[t]here will be no reconciliation of the CRD-Noor

OAP, the Wells Fargo Amounts, or any other amounts related thereto."  (*Id.* ¶ 17 (quoting Noor

Settlement ¶ 1(e)).)

The Noor Settlement further provided the following release (the "Release") from Noor to

the Trustee and the Debtors:

> Defendants on behalf of themselves, their heirs, representatives and assigns, do hereby fully, finally and forever waive, release and/or discharge the Trustee, the Debtors, their estates, and their respective heirs, successors, assigns, affiliates, officers, directors, shareholders, members, associates, partners, subsidiaries, predecessors, successors, employees, attorneys, and agents from any and all of Defendants' claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, **which arise from or otherwise relate to the transactions referenced in the Adversary Proceeding or the Claim or result from any act or omission with respect**

> **to the Adversary Proceeding or the Claim to the extent permitted by
> law**. . . .

(*Id.* ¶ 18 (quoting Noor Settlement ¶ 10) (emphasis in original).)

### F.    The Wells Fargo Settlement

On November 2, 2015, the Trustee filed an adversary proceeding against Wells Fargo

styled *James S. Feltman, as Trustee v. Wells Fargo Bank, N.A.*, Case No. 15-01391 (MG) (the

"Wells Fargo Proceeding") seeking to recover at least $2.7 million of funds that Wells Fargo

held in the Wells Fargo Account, including an estimated $1.241 million that both the Trustee and

Noor claimed an interest in (the "CRD-Noor OAP").  (Wells Fargo MOL at 8.)  On November

23, 2015, the Trustee and Wells Fargo settled the Wells Fargo Proceeding.  ("Wells Fargo

Settlement," Wells Fargo Proceeding, ECF Doc. ## 21–22.)  The Wells Fargo Settlement

provides that Wells Fargo shall be deemed a conduit that is not liable for any claims that may

arise from the turnover of the disputed funds to the Trustee.  (*Id.* at 8–9.)  The Wells Fargo

Settlement provided that:

> With regard to all monies received and turned over to the Trustee by Wells
> Fargo pursuant to this Stipulation, Wells Fargo shall be deemed a mere
> conduit and will transfer to the Trustee all right, title, and interest in and to,
> the turned over funds without any representation or warranty other than that
> it is turning over all monies received and the Trustee assumes any and all
> liabilities, cost and expenses in connection with such monies, including any
> liabilities for returned checks and mistaken or improper payments.  Those
> liabilities, if any, shall be the obligations of the Debtors to be dealt with by
> the Trustee and not Wells Fargo.

(*Id.* at 9 (citing Wells Fargo Settlement ¶ 14).)

The Wells Fargo Settlement also provided that:

> Wells Fargo has agreed to turnover the Disputed OAP [disputed unapplied
> cash collections] to the Trustee following the occurrence of the earlier of (i)
> entry of an order approving a stipulation between the Trustee and any party
> claiming an interest in a portion of the Disputed OAP pursuant to which
> among other things Wells Fargo is released in connection with such
> Disputed OAP, or (ii) entry of an order of the Court in a form reasonably

> agreed to by Wells Fargo and the Trustee following notice to all parties
> known to have asserted an interest in any portion of the Disputed OAP
> ("Disputing Parties"), that approves the release of the Disputed OAP from
> Wells Fargo to the Trustee and finds that Wells Fargo shall have no liability
> to either CRS or the Disputing Parties with respect to the Disputed OAP
> funds so released.

(*Id.* (citing Wells Fargo Settlement ¶ 5).)

The Wells Fargo Settlement included a specific provision addressing the CRD-Noor OAP, providing that Wells Fargo would not be required to release such funds unless Wells Fargo was relieved from any and all liability with respect to such funds. (*Id.* (citing Wells Fargo Settlement ¶ 16).)

### G.    The Staff Management Illinois Lawsuit

On January 25, 2019, Noor filed an action against Staff Management in the United States District Court for the Northern District of Illinois, captioned *Noor Staffing Group, LLC d/b/a J.D. & Tuttle Hospitality Staffing v. Staff Management Solutions LLC and PeopleScout MSP, LLC*, Case No. 1:19-cv-00529 (the "Illinois Lawsuit"), seeking to recover the funds that Staff Management sent to the Wells Fargo Account. (Illinois Lawsuit, ECF Doc. # 1.) Noor's complaint in the Illinois Lawsuit alleges that "Staff Management directed a portion of the payments for the labor services performed by [Noor] Staffing to a bank account, which was not owned by [Noor] Staffing." (*Id.* ¶ 25.) Noor alleges that Staff Management owes $1,082,447.29 to Noor under the Noor Contract. (*Id.* ¶¶ 18–31.)

On June 24, 2019, Staff Management filed its answer and counterclaims against Noor in the Illinois Lawsuit. (Illinois Lawsuit, ECF Doc. # 24 at 6–14.) Staff Management asserted counterclaims for unjust enrichment and a declaratory judgment that "the [Noor] Settlement Agreement release[d] any claims by Noor against [Staff Management] regarding the funds sent by Staff Management to the Wells Fargo Account." (*Id.* at 13.) Staff Management's unjust

10

enrichment claim against Noor is premised on the fact that Noor negotiated with the Trustee for the Noor Settlement while simultaneously making a claim to funds in the Wells Fargo Account. (*Id.* at 14.)  Noor was therefore allegedly enriched by, and benefited from, the funds paid by Staff Management.  (*Id.*)

On March 6, 2020, Noor responded to Staff Management's counterclaims and (i) denied that it authorized Staff Management to send payments to the Wells Fargo Account, (ii) admitted that, while making claim to those funds, Noor negotiated the Noor Settlement with the Trustee, and (iii) denied that it was enriched by, and benefited from, the funds paid by Staff Management. (Illinois Lawsuit, ECF Doc. # 59 at 5.)

On April 8, 2020, at oral argument before this Court on the Injunction Motion, the Trustee argued that Staff Management's defenses and counterclaims against Noor in the Illinois Lawsuit are duplicative of Staff Management's claims against the Trustee in this adversary proceeding.  According to the Trustee, Staff Management should fully prosecute its claims against Noor in the Illinois Lawsuit, instead of substituting the Trustee for Noor in the present case by asserting the same claims.

On April 20, 2020, at oral argument on the pending Motions to Dismiss, Ray Hughes, Esq., counsel to Staff Management, conceded that Staff Management's claims for unjust enrichment and money had and received in the pending case could not be sustained if Staff Management prevailed in the Illinois Lawsuit.

### H.    Staff Management's Motion to Enforce the Noor Settlement

On August 8, 2019, Staff Management filed a motion in the Debtors' chapter 11 case to enforce the Noor Settlement.  (Trustee Motion to Dismiss ¶ 19 (citing "Settlement Enforcement Motion," Main Case, ECF Doc. # 965).)  In the Settlement Enforcement Motion, Staff

Management argued that Noor's Release in the Noor Settlement covered the funds in the Wells

Fargo Account that were being litigated in the Illinois Lawsuit, thus precluding Staff

Management from any liability.  (*Id.*; *see, e.g.*, Settlement Enforcement Motion ¶¶ 1, 18–20, 26–

27, 32–33, 36, 38–39, 41–42, 44–45, 48.)

On October 10, 2019, the Court entered an order denying the Settlement Enforcement

Motion.  ("Settlement Enforcement Order," Main Case, ECF Doc. # 991.)  The Settlement

Enforcement Order found that the "[Noor Settlement] provided, among other things, that Noor

released all claims related to the Wells Fargo Account" and the "the terms of the [Noor

Settlement] protect the Trustee, the Debtors, [and] their estates."  (*Id.* at 4, 15; Trustee Motion to

Dismiss ¶ 20.)  However, the Court found that Staff Management did not have standing directly

to enforce the Noor Settlement because Staff Management was not a party to the Noor

Settlement and was not unambiguously included in Noor's Release.  (Settlement Enforcement

Order at 14; Trustee Motion to Dismiss ¶ 20.)  *The Settlement Enforcement Order expressly*

*declined to decide whether the Noor Settlement and Noor's Release barred any claims that Staff*

*Management could assert against the Debtors' estates related to the Wells Fargo Account, as*

*that issue was not before the Court.*  (Settlement Enforcement Order at 7 n.2; Trustee Motion to

Dismiss ¶ 21.)

### I.     The Amended Complaint

On November 29, 2019, Staff Management filed the Amended Complaint in this

adversary proceeding, seeking to recover from the Trustee and Wells Fargo funds that were

mistakenly sent to the Wells Fargo Account, *so that they can be paid to Noor.*  (Amended

Complaint ¶ 39 ("Staff Management seeks recovery of the funds that were mistakenly sent to the

Wells Fargo Account from the Trustee and Wells Fargo, so that they can be paid to Noor.").)

Staff Management also alleges that Wells Fargo took some of the funds sent from the Wells

Fargo Account for use by Wells Fargo.  (*Id.* ¶ 35.)  Staff Management brought claims for unjust

enrichment and money had and received against both the Trustee and Wells Fargo.  (*Id.* ¶¶ 40–

59.)  Staff Management also seeks a declaratory judgment that the funds sent by Staff

Management to the Wells Fargo Account are not property of the Debtors' estates and directing

turnover of those funds to Staff Management.  (*Id.* ¶¶ 60–65.)

### J.    The Injunction Opinion

On December 24, 2019, Staff Management filed the Injunction Motion, seeking a

preliminarily injunction barring the Trustee from taking any action with respect to $1,020,182.46

in cash referenced in the Corporate Monthly Operating Report (Main Case, ECF Doc. # 1017).

(Injunction Motion.)  On April 15, 2020, this Court entered the Injunction Opinion.  First, the

Court found that Staff Management's claims against the Trustee in the pending adversary

proceeding and Injunction Motion are duplicative of the issues currently being litigated by Staff

Management and Noor in the Illinois Lawsuit.  Second, the Court held that Staff Management

had not made a clear showing of irreparable harm absent the relief requested, a likelihood of

success on the merits in the pending adversary proceeding, or that the balance of the equities tip

decidedly in its favor.

### K.    The Motions to Dismiss

The Defendants argue in their Motions to Dismiss that the Noor Settlement and Staff

Management's prior admissions in the Settlement Enforcement Motion bar recovery from the

Debtors' estates and from Wells Fargo in this adversary proceeding.  (Trustee Motion to Dismiss

¶¶ 28–34; Wells Fargo MOL at 15–16.)  The Trustee further argues that, although Staff

Management may have defenses to Noor's claims in the Illinois Lawsuit, those defenses do not

constitute affirmative claims against the Debtors' estates or the Trustee.  (Trustee Motion to Dismiss at 7–8.)

The Defendants argue that Staff Management's equitable claims must be dismissed because Staff Management has not met the heightened pleading standard under Federal Rule of Civil Procedure 9(b) to invoke the mistake of fact doctrine.  (Trustee Motion to Dismiss ¶¶ 35–42 (citing Injunction Motion ¶¶ 50–51); Wells Fargo MOL at 17–19.)  Additionally, the Trustee contends that it detrimentally relied on Staff Management's mistaken payments to the Wells Fargo Account for the Noor Settlement, precluding any recovery based on Staff Management's mistake.  (Trustee Motion to Dismiss ¶ 38 (citing *Bank Saderat Iran v. Amin Beydoun, Inc*., 555 F. Supp. 770, 773 (S.D.N.Y. 1983)); Wells Fargo MOL at 18–19.)

The Trustee maintains that Staff Management's request for declaratory relief is redundant of its equitable claims and should be dismissed on the same grounds.  (Trustee Motion to Dismiss ¶ 43.)  Alternatively, the Court should exercise its considerable discretion and refrain from deciding whether a declaratory judgment should be entered.  (*Id.* ¶ 44 (citing *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003)).)

Wells Fargo moves to dismiss the Amended Complaint on a separate ground.  Wells Fargo argues that there are no plausible claims that Staff Management can assert against Wells Fargo because, pursuant to this Court's orders, Wells Fargo turned over all the funds it held on CRD's behalf either to the Trustee or to Noor.  (Wells Fargo MOL at 6, 13–14 (citing Wells Fargo Settlement; Noor Settlement).)  In addition, Wells Fargo argues, in its initial Injunction Motion, Staff Management attached and relied upon a spreadsheet showing that Wells Fargo is no longer holding any of the funds transferred by Staff Management to the Wells Fargo Account. (*Id.* at 12, 13–15 (citing Hughes Declaration, Ex. E).)  Wells Fargo argues it could not have

14

"benefitted" from receipt of Staff Management funds sufficient to sustain its equitable claims.

(*Id.* at 18.)  Further, Staff Management's request for declaratory relief is moot because Wells

Fargo no longer holds any of Staff Management's funds.  (*Id.* at 19.)

### L.    Staff Management's Oppositions

In response to the Trustee Motion to Dismiss, Staff Management argues that the

Amended Complaint alleges with sufficient particularity the factual requirements to state a claim

under Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  (Opposition to Trustee ¶¶ 2–5.)

Staff Management also rejects Defendants' arguments that the Noor Settlement and

Wells Fargo Settlement released the Trustee and Wells Fargo from any disputes relating to the

Wells Fargo Account.  (*Id.* ¶¶ 6–7; Opposition to Wells Fargo ¶¶ 7–11.)  Staff Management

argues that the Noor Settlement and Wells Fargo Settlement do not apply to claims by Staff

Management against Wells Fargo or the Trustee for the disputed funds since Staff Management

was not a party to the settlements.  (Opposition to Trustee ¶ 6; Opposition to Wells Fargo ¶ 8.)

Staff Management also argues that Wells Fargo and the Trustee cannot raise a change in

position defense to the mistake of fact doctrine because they were aware that they had funds that

did not belong to them, and did not notify Staff Management.  (Opposition to Trustee ¶¶ 9–10;

Opposition to Wells Fargo ¶ 12 (citing 82 N.Y. Jur. 2d Payment and Tender § 106 n.6 (2020).)

Furthermore, a change of position defense is an affirmative defense, which must be proven by

the Trustee, not merely asserted in a motion to dismiss without sufficient evidence.  (Trustee

Motion to Dismiss ¶ 9 (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.

1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of

the complaint.")).  Finally, Staff Management argues that under section 541 of the Bankruptcy

Code, claims for a declaratory judgment are not duplicative of claims for money had and received and unjust enrichment. (*Id.* ¶ 17.)

With respect to Wells Fargo's argument that it no longer has the funds in the Wells Fargo Account, Staff Management states that this is a question of fact necessitating further discovery. (Opposition to Wells Fargo ¶ 5.)

### M.    The Replies

Relying on the Injunction Opinion, the Trustee argues that Staff Management is unlikely to succeed on the merits of its equitable claims under the mistake of fact doctrine.  (Trustee Reply ¶ 3.)  Staff Management also cannot sustain its claims for money had and received and unjust enrichment because Staff Management cannot show that equity and good conscience requires the Trustee to pay back the funds. (*Id.* ¶ 5.)  Further, dismissing Staff Management's claims against the Trustee does not consign Staff Management to "paying twice" for the temporary staffing services that it procured for its clients since Staff Management has counterclaims in the Illinois Lawsuit. (*Id.* ¶ 6.)

Wells Fargo separately argues that there is no issue of fact regarding whether Wells Fargo dispersed the funds in the Wells Fargo Account pursuant to the Wells Fargo Settlement and Noor Settlement.  (Wells Fargo Reply at 4.)  In fact, Staff Management admitted in the Hughes Declaration that Wells Fargo no longer has the funds. (*Id.* at 5.)  As such, the Wells Fargo Settlement and Noor Settlement preclude a finding of liability against Wells Fargo. (*Id.* at 8–9.)  Finally, Wells Fargo requests that its dismissal from this adversary proceeding be with prejudice. (*Id.* at 10.)

16

## II.   **LEGAL STANDARD**

The Trustee and Wells Fargo seek dismissal of Staff Management's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court therefore addresses Staff Management's pleading burden below.  The Court also considers whether a stay of this action against the Trustee and Noor is appropriate pursuant to the first-filed rule.

### A.  Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To survive a motion to dismiss pursuant to Civil Rule 12(b)(6), made applicable to this adversary proceeding pursuant to Bankruptcy Rule 7012(b), "a complaint must set out only enough facts to 'state a claim to relief that is *plausible* on its face.'"  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis in original)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted)).  Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citations and internal quotation marks omitted).

Following the Supreme Court's decision in *Iqbal*, courts use a two-prong approach when considering a motion to dismiss.  *See, e.g.*, *In re ResCap Liquidating Trust Mortg. Purchase Litig.*, 524 B.R. 563, 583 (Bankr. S.D.N.Y. 2015); *McHale v. Citibank, N.A. (In re the 1031 Tax Grp.)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009); *Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732(DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (Chin, J.)

(acknowledging a "two-pronged" approach to deciding motions to dismiss). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in the factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true"). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d. Cir. 2008) (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citation omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *DDR*

*Const. Servs., Inc. v. Siemens Indus., Inc.*, No. 09 CIV. 09605 RJH, 2011 WL 982049, at *1

(S.D.N.Y. Mar. 22, 2011).  Courts also consider documents not attached to the complaint or

incorporated by reference, but "upon which the complaint *solely* relies and which *[are] integral*

*to the complaint*."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks

omitted) (emphasis in original) (quoting *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47

(2d Cir. 1991)); *see also Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931(RJS), 2009 WL 928279, at *8

(S.D.N.Y. Mar. 30, 2009) (Sullivan, J.); *Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677,

690 (Bankr. S.D.N.Y. 2008) ("A court may even consider a document that has not been

incorporated by reference where the complaint relies heavily upon its terms and effect, which

renders the document integral to the complaint.") (internal quotation marks omitted) (quoting

*Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A.* (*In re Musicland Holding Corp.*), 374

B.R. 113, 119 (Bankr. S.D.N.Y. 2007), *aff'd*, 386 B.R. 428 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x

36 (2d Cir. 2009)).

### B.   The First-Filed Rule

"As a general rule, where there are two competing lawsuits, the first suit should have

priority."  *Emp'rs Ins. of Wausau v. Fox Enter. Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008)

(internal citations and quotation marks omitted); *see also Adam v. Jacobs*, 950 F.2d 89, 92 (2d

Cir. 1991).  The court in which the second-filed action was brought has the authority to stay or

dismiss the action.  *See Adam*, 950 F.2d at 92 (finding that "[t]he decision whether or not to stay

or dismiss a proceeding rests within a district judge's discretion").  "This discretion arises from

the court's power to administer its docket to conserve judicial resources, and to promote the

efficient and comprehensive disposition of cases."  *Castillo v. Taco Bell of America, LLC*, 960 F.

Supp. 2d 401, 404 (E.D.N.Y. 2013).  In determining whether to apply the first-filed rule, "the

court considers whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts.  The lawsuits need not be identical, but the claims and rights raised in the two actions must not differ substantially."  *Id.*

The presumption created by the first-filed rule can be overcome "where there is a showing of balance of convenience or special circumstances."  *See Emp'rs Ins. of Wausau*, 522 F.3d at 274 (internal citations and quotation marks omitted).  In analyzing the "balance of convenience" exception, courts consider factors that "are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)."  *Id.* at 275 (internal citations and quotation marks omitted).

## III.   <u>DISCUSSION</u>

As set forth below, the Court dismisses Staff Management's Amended Complaint against Wells Fargo because Staff Management's equitable claims against Wells Fargo are not plausible on their face.  The Court also stays the pending adversary proceeding, including adjudication of the Trustee Motion to Dismiss, pursuant to the first-filed rule because the relief sought in Staff Management's Amended Complaint is contingent on the outcome of the Illinois Lawsuit.

### A.   **Staff Management's Claims Against Wells Fargo Are Not Plausible On Their Face**

Wells Fargo argues that Staff Management's claims against it cannot be sustained because Staff Management admitted in the Hughes Declaration, attached to its Injunction Motion, that Wells Fargo no longer retains any of the disputed funds.  (Wells Fargo MOL at 14; Wells Fargo Reply at 7.)  In response, Staff Management argues that whether or not Wells Fargo still has the funds transferred by Staff Management to the Wells Fargo Account remains a question of fact, subject to further discovery.  (Wells Fargo Opposition ¶ 5.)

The Court concludes that Staff Management's argument lacks merit.  On a motion to dismiss pursuant to Civil Rule 12(b)(6), the court "may consider admissions contained in [plaintiff's] briefs (and exhibits thereto). . . ."  *Scott v. City of White Plains*, No. 10 Civ. 1887(KBF), 2012 WL 1267873, at *8 n.7 (S.D.N.Y. Apr. 10, 2012); *see also Debora v. WPP Grp. PLC*, No. 91 Civ. 1775 (KTD), 1994 WL 177291, at *9 (S.D.N.Y. 1994) (considering judicial admission made by plaintiff in prior court filings to dismiss plaintiff's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure).  The Second Circuit issued a recent decision holding that judicial admissions are formal statements of fact made by a party or its counsel that are "intentional, clear, and unambiguous."  *In re Motors Liquidation Co.*, Docket No. 18-1954, at *9 (2d Cir. May 6, 2020).  "An assertion of fact in a pleading is a judicial admission by which [a party] normally is bound throughout the course of the proceeding."  *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 157 (E.D.N.Y. 2016) (internal quotation marks and citations omitted); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.").  Where a third party plaintiff's admission in a pleading "foreclose[d] any plausible allegation that third-party defendants breached a legal duty to [him] as would be required to state a plausible tort claim," the court recommended that third-party defendants' motion to dismiss be granted with prejudice.  *See United States v. Whitehill*, 14-CV-188A(Sr), 2015 WL 13721694, at *4 (W.D.N.Y. Sept. 15, 2015) (Report and Recommendation), *adopted by* 14-CV-188-RJA-MJR, 2018 WL 459300 (W.D.N.Y. Jan. 18, 2018).

Here, the statements in the Hughes Declaration are judicial admissions precluding Staff Management from recovering from Wells Fargo under theories of unjust enrichment and money had and received.  The Hughes Declaration directly contradicts Staff Management's basis for

asserting equitable claims against Wells Fargo in the Amended Complaint—*i.e.*, that "some of the funds sent to the Wells Fargo Account by Staff Management have since been taken out of the Wells Fargo Account for use by Wells Fargo." (Amended Complaint ¶ 35.) The Hughes Declaration and the spreadsheet attached to the Hughes Declaration demonstrate that Wells Fargo no longer has the $1,541,056.31 in funds allegedly transferred by Staff Management to the Wells Fargo Account. (Hughes Declaration ¶¶ 3–4; Amended Complaint ¶ 28.) The Hughes Declaration states that "[t]he Wells Fargo spreadsheet shows that $1,058,952.80 was transferred to the Trustee from the funds that Staff Management sent to the [Wells Fargo Account]." (Hughes Declaration ¶ 4.) The spreadsheet Hughes relies on for that statement also shows that Wells Fargo transferred $482,103.51 to Noor from the Wells Fargo Account pursuant to this Court's orders. (Hughes Declaration ¶ 4; *id*., Ex. E.)

At oral argument on the Motions to Dismiss, Hughes conceded that Staff Management's claims for unjust enrichment and money had and received against Wells Fargo cannot be sustained if Wells Fargo no longer holds the funds. (Aug. 20, 2020 Tr. at 13: 5–12.) The Court agrees with Wells Fargo that Hughes's admissions in the Hughes Declaration foreclose any plausible allegation that Wells Fargo retains funds sent by Staff Management to the Wells Fargo Account, as would be required for Staff Management to state a plausible claim for relief in the Amended Complaint.

Accordingly, the Court grants the Wells Fargo Motion to Dismiss with prejudice because providing Staff Management with leave to amend the Amended Complaint would be futile. *See In re Lehman Bros. Mortgage-Backed Secs. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011) ("[A] denial of leave to amend is not an abuse of discretion if amendment would be futile.").

### B.    A Stay Is Warranted Pursuant to the First-Filed Rule

The Trustee recognizes that the Court has broad judicial discretion to stay or dismiss the

pending adversary proceeding because Staff Management seeks the same relief from the Trustee

in the Amended Complaint that Staff Management seeks in the Illinois Lawsuit.  (Trustee Reply

¶ 7; Aug. 20, 2020 Tr. at 20: 8–19.)  The Court concludes that the first-filed rule applies because

the parties, facts, claims, and legal issues in the Illinois Lawsuit are substantially similar to those

in the instant adversary proceeding.  Accordingly, a stay of this case is warranted pending

resolution of the Illinois Lawsuit, which was filed nine months before the instant adversary

proceeding.  *See Santana v. Cavalry Portfolio Servs., LLC*, 19 Civ. 3773 (PAE), 2019 WL

6173672, at *5 (S.D.N.Y. Nov. 19, 2019) ("Where the first-filed rule applies, a court may

dismiss the second-filed case, transfer it to the first-filed district, or stay the second case pending

resolution of the first-filed case.").

First, the two actions involve similar parties.  The Illinois Lawsuit involves counterclaims

for unjust enrichment by Staff Management against Noor for money transferred to the Wells

Fargo Account.  Likewise, the pending adversary proceeding involves Staff Management's

equitable claims against Noor, the Trustee, and Wells Fargo for recovery of the same funds.  The

fact that Wells Fargo and the Trustee are not parties to the Illinois Lawsuit does not "disqualify

[this case] from the first-filed rule.  Rather, the core question is whether there are common

violations of law alleged."  *Liberty Mut. Ins. Co. v. Fairbanks Co*., 17 F. Supp. 3d 385, 393

(S.D.N.Y. 2014) (internal quotation marks and citations omitted).

Second, the two actions involve substantially similar facts, claims, and legal issues.  The

Injunction Opinion is instructive:

> After this Court denied Staff Management's Settlement Enforcement
> Motion on the ground that Staff Management lacked standing to enforce

> Noor's release of the Debtors and the Trustee, Staff Management sued the Trustee in the pending adversary proceeding for the same defenses it raised against Noor in the Illinois Lawsuit. At oral argument [on the Injunction Motion], it was revealed that Staff Management filed a counterclaim against Noor in the Illinois Lawsuit, and that the Illinois Lawsuit is in the middle of discovery. Staff Management's counterclaim against Noor in the Illinois Lawsuit includes a cause of action for unjust enrichment. Like the allegations against the Trustee for unjust enrichment in the Amended Complaint, Staff Management alleges in the Illinois Lawsuit that it sent payments to the Wells Fargo Account; Noor, while making claim to those funds, negotiated the Settlement Agreement with the Trustee; and Noor was therefore enriched by and/or benefited from the funds paid by Staff Management. (Illinois Lawsuit, ECF Doc. # 24 at 14.) The Trustee is correct in arguing that Staff Management should pursue the merits of its defenses against Noor before the Illinois District Court, where its case has been pending for fourteen months, instead of seeking injunctive relief against the Trustee from this Court for identical causes of action.

(Injunction Opinion at 14–15.)

Moreover, Staff Management's counsel conceded at oral argument on the Motions to Dismiss that if Staff Management prevails in the Illinois Lawsuit, it will have no legal recourse against Wells Fargo or the Trustee. (Aug. 20, 2020 Tr. at 16: 6–9.) In the interest of judicial economy, this Court declines to rule on the Trustee's Motion to Dismiss until the Illinois court resolves the issue of Staff Management's liability for the amount transferred from the Wells Fargo Account, particularly in light of Noor's release of *any* claim relating to those funds. *See Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 440 (S.D.N.Y. 2001) (holding that "the interests of judicial economy weigh in favor of staying the entire action" because if "[plaintiff] succeeds against defendant in the [first-filed action], a decision in this Court will be rendered unnecessary").

Finally, the Court finds that no "special circumstances" warrant giving priority to the current case. Therefore, the similar positions held by Staff Management in both actions and the "nearly identical claims, parties, facts, and law" warrant application of the first-filed rule. *See Santana*, 2019 WL 6173672, at *6.

## IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Court **GRANTS** the Wells Fargo Motion to Dismiss with prejudice and hereby **STAYS** the adversary proceeding against the Trustee and Noor, including adjudication of the Trustee Motion to Dismiss, pending resolution of the Illinois Lawsuit.

**IT IS SO ORDERED.**

Dated:   May 6, 2020
          New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge